IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. JAMES COREY EDMISTON

**Appeal from the Circuit Court for Marshall County**
**No. 14651      Charles Lee, Judge**

---

**No. M2002-00059-CCA-R3-CD - Filed November 15, 2002**

---

A jury convicted the Defendant, James Corey Edmiston, of attempted second degree murder, especially aggravated robbery, especially aggravated burglary, aggravated assault, vandalism and resisting arrest. The trial court merged the aggravated assault conviction into the attempted murder conviction. The court sentenced the Defendant as a Range I offender to ten years for the attempted murder; twenty-four years for the especially aggravated robbery; ten years for the especially aggravated burglary; and eleven months, twenty-nine days for each of the two misdemeanor convictions. The trial court ordered the felony sentences to run consecutively to each other, with the misdemeanor sentences to run concurrently with the attempted murder sentence, for an effective sentence of forty-four years. The Defendant now appeals, challenging the sufficiency of the evidence for the attempted second degree murder conviction, and the trial court's imposition of consecutive sentences. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Hershell Koger, Pulaski, Tennessee, for the appellant, James Corey Edmiston.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; W. Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The victim in this case, Louise Cozart, was eighty-eight years old at the time of the offenses and lived by herself. She testified that during the afternoon of May 21, 2001, she was quilting in her kitchen when she heard a knock on the front door. When she got there she saw the Defendant on her porch. She recognized the Defendant because he lived nearby. She saw the Defendant walk off her porch and she returned to the kitchen in order to close her back door; by the time she arrived,

however, the Defendant was already there. The Defendant pulled a knife, opened the storm door, walked in the house and demanded Ms. Cozart's money.

When Ms. Cozart replied that she did not have any money, the Defendant struck her in the head with the knife, lacerating her scalp. The Defendant continued to demand money and continued to strike Ms. Cozart in the head with his knife. Ms. Cozart began bleeding profusely. She retreated into the living room, then into her bedroom, with the Defendant following and striking her repeatedly with the knife. While in her house, the Defendant overturned Ms. Cozart's television set and ripped both of her phones out of the wall.

Ms. Cozart showed the Defendant her pocketbook and directed him to some change on a table. When they reached the bedroom, the Defendant began demanding her jewelry. She directed him to a bowl on her dresser. At one point while they were in the bedroom, the Defendant ran the knife across Ms. Cozart's throat but did not cut her. The Defendant directed Ms. Cozart to lie on the bed, which she did. When she sat up, the Defendant struck her in the face with his fist. She lay back down and covered her head with one of her pillows. When she could no longer hear the Defendant in her house, she got up and managed to walk to a neighbor's house. The neighbor summoned help and Ms. Cozart was transported to the hospital.

Photographs of the crime scene and Ms. Cozart's clothing demonstrate that Ms. Cozart lost a significant amount of blood during and as a result of the attack. Dr. Gary Wolf, who treated Ms. Cozart at the emergency room, testified that Ms. Cozart suffered sixteen lacerations to her scalp that required a total of sixty-three sutures. Some of the lacerations went down to the skull. Dr. Wolf testified that the total length of the lacerations was twenty inches. He stated that she had suffered "significant blood loss" and that she had been at a "substantial risk of death had the bleeding not stopped or been controlled."

Sheena Puckett testified that she was at the Defendant's house on the afternoon of the attack. She saw the Defendant there and heard the Defendant ask her cousin if he had blood on him. She also saw a knife on the floor near the front door with what appeared to be blood on it. She testified that she heard the Defendant repeatedly state that he "cut that bitch" and "hit that bitch." She stated that the Defendant claimed that the woman owed him money. She also testified that the Defendant said something about killing the woman.

Bethany Jacobs was at the Defendant's house with Ms. Puckett. While there, she saw the Defendant in the yard with a knife in one of his hands. She testified that she heard the Defendant state that he had cut and killed the woman.

Dorothy Whitehead lived in the neighborhood. She testified that, at about three p.m. on the day of the attack, she heard a tire blow out. She looked out a window and saw a car with a flat tire being driven by a black male. She watched the car turn into a driveway and hit a fence. The driver got out of the car and ran through Ms. Whitehead's back yard. She called the police and reported the man's location. As she continued to watch him, she saw the man pull an object that looked like

a knife out of his shorts and throw it in a trash can. She subsequently saw the police apprehend the man.

After taking the Defendant into custody, the police recovered a knife from the trash can described by Ms. Whitehead. They also took into evidence the clothes the Defendant was wearing. In his pockets they discovered coin purses and jewelry subsequently identified as the victim's.

Fingerprints were recovered from one of Ms. Cozart's phones as well as from her television set. Oakley McKinney, a special agent forensic scientist with the Tennessee Bureau of Investigation, testified that these prints matched the Defendant's. Special agent forensic scientist Mike Turbeville testified that the DNA recovered from blood on the shirt the Defendant was wearing when he was arrested matched the victim's DNA.

## SUFFICIENCY OF THE EVIDENCE

The Defendant contends that the evidence is not sufficient to support the jury's finding that he attempted to murder Ms. Cozart. Rather, he argues, the proof supports the aggravated assault conviction. We disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Second degree murder is defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). One attempts to commit second degree murder when he or she acts with intent to

knowingly kill the victim, and the conduct constitutes a substantial step toward the commission of the murder. See id. § 39-12-101(a)(3). "Conduct does not constitute a substantial step . . . unless the person's entire course of action is corroborative of the intent to commit the offense." Id. § 39-12-101(b). The Defendant argues that the facts indicate that he struck Ms. Cozart "with some part of the knife, *other than the blade*," and that, "had he wanted to cut her throat, he had ample opportunity." In other words, the Defendant contends that, had he intended to kill Ms. Cozart, he would have.

We are not persuaded by the Defendant's "logic." The proof adduced at trial demonstrates that the Defendant struck the elderly victim repeatedly with a knife, causing profuse bleeding. He struck her in the face with his fist. He ordered her to remain lying down on her bed and ripped her phones out of the wall, rendering it impossible for her to summon help from her own home. Ms. Cozart testified that she remained on the bed "maybe 30 minutes or longer,"pretending to be dead and hoping the Defendant would leave. The Defendant spoke to his visitors about having killed the victim. A person acts knowingly when the person is aware that the conduct is reasonably certain to cause the result. See Tenn. Code Ann. § 39-11-106(20); see also State v. Page, 81 S.W. 3d 781, 788 (Tenn. Crim. App. 2002). While the Defendant did not check the victim's pulse before leaving her house, it is obvious from the statements he made that he anticipated that she had or would bleed to death, and his actions in ripping out her phones were clearly a step in ensuring that result. The evidence was sufficient for the jury to have concluded that the Defendant attempted to knowingly kill the victim. Accordingly, this issue is without merit.

## SENTENCING

The Defendant next contends that the trial court erred in ordering three of his sentences to run consecutively. Again, we disagree.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

-4-

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court ordered the Defendant's felony sentences to run consecutively to one another for an effective sentence of forty-four years based upon finding the Defendant to be "an offender whose record of criminal activity is extensive," and "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(2), (4). We agree with the trial court on both findings; either one is sufficient to support the imposition of consecutive sentences. See id. § 40-35-115(b). Although the Defendant was only eighteen when he committed the instant crimes, he had previously committed as a juvenile three thefts, two aggravated burglaries, one assault, and one reckless endangerment with a deadly weapon. These seven prior offenses are sufficient to support the trial court's conclusion that the Defendant is an offender whose record of criminal activity is extensive. See, e.g., State v. Pettus, 986 S.W.2d 540, 545 (Tenn. 1999) (upholding the imposition of consecutive sentences on the grounds that the defendant had an extensive record of criminal activity where prior record consisted of two thefts, an unlawful weapons conviction, contributing to the delinquency of a minor, and driving on a revoked or suspended license). Accordingly, the trial court's imposition of consecutive sentences on this basis was proper.

In addition to finding that the Defendant qualified for consecutive sentencing based upon his criminal history, the trial judge determined the Defendant to be a "dangerous offender." See Tenn. Code Ann. § 40-35-115(b)(4). In making this determination the trial court considered the nature of the Defendant's prior offenses, as well as the nature of the instant offenses:

> [I]n considering how this offense was committed, whether the defendant is a dangerous offender, [I] can consider just [sic] the age of the victim; can consider the number of blows that were inflicted upon the victim; can consider the use of a deadly weapon; can consider the injuries suffered by the victim; can consider in this case that the defendant, after this attack, was, in effect, bragging about what he had done to this old lady; can consider that the defendant expressed an intent, callously and cold disregard for human life in his activities after the conviction [sic].

The court then turned to considerations of society's best interest and the Defendant's rehabilitative potential. The court noted that the Defendant had been released from a juvenile facility a mere twenty-eight days prior to committing the instant offenses, and concluded that "[t]his defendant has a record showing that his prospects of rehabilitation are nil." Accordingly, the court stated, "it is necessary to protect society from the further criminal behavior of this defendant, who has now advanced from . . . petty burglary to a person who is a not only a danger to the property that society

-5-

has, but now a danger to the persons in our society, as evidenced from this particular crime." Finally, the trial court recognized that the Defendant's sentence was "extremely long," but found it to be "most deserving."

The facts support the trial court's determination that the Defendant is a dangerous offender in that his attack upon Ms. Cozart indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. See id. § 40-35-115(b)(4). The trial court's findings further satisfy the requirements that the extended sentence be necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offenses committed. See State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). Accordingly, the Defendant's challenge to his consecutive sentences is without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-6-